Mr. Charles L. Schlumberger Quattlebaum, Grooms, Tull Burrow 111 Center Street, Suite 1900 Little Rock, AR 72201
Dear Mr. Schlumberger:
I am writing in response to your request, made pursuant to A.C.A. § 25-19-105(c)(3)(B), for my opinion on whether the decision of the City of Blytheville declining to disclose certain records in response to a request from your client, theBlytheville Courier News, is consistent with the Arkansas Freedom of Information Act (FOIA), A.C.A. §§ 25-19-101—109 (Repl. 2002 and Supp. 2005). You have recited as background the following information:
 As detailed in an article that appeared in the News
on February 13, 2006 . . . . , several former Blytheville police officers wrote letters to the News
complaining of misconduct by Police Chief Royce Carpenter. On February 13, 2006, the City announced that Mr. Carpenter was a taking a leave of absence, effective immediately, and further that he would resign at the conclusion of the leave of absence. By letter dated February 14, 2006 . . ., the News
requested records pertaining to the matter, including records forming the basis for the leave of absence as well as records reflecting whether Mr. Carpenter would receive pay and other benefits during the leave of absence.
 By letter dated February 17, 2006, Mike Bearden, the Blytheville City Attorney, issued a letter formally declining the News's request, contending that there is no compelling public interest in disclosure of the information.
RESPONSE
Although I have not viewed the particular records, it is my opinion based on previous opinions of this office that the City's decision to withhold records reflecting compensation and other benefits in connection with the Police Chief's leave of absence is likely contrary to the FOIA. Because I do not know what other records would be responsive to the News's FOIA request, I cannot opine conclusively as to the disclosability of records that may bear on the basis for the leave of absence. Nor can I determine disputed questions of fact or apply principles of law to a set of facts that may be in dispute. For these reasons, I am unable to test the City's decision to decline to disclose any other relevant records. Nevertheless, I can and will provide you with the legal standards to be applied in determining whether certain pes of records that may be involved in this instance must be disclosed.
It appears that the City has invoked both the "personnel records" exemption and the exemption for "employee evaluation or job performance records" as the applicable exceptions to the general rule that all public records are subject to disclosure under the FOIA (A.C.A. § 25-19-105(a)(1)(A) (Supp. 2005)). The FOIA provides an exemption for "personnel records to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy." A.C.A. § 25-19-105(b)(12) (Supp. 2005). "Employee evaluation or job performance records" on the other hand, are releasable only if the following three conditions have been met:
 1. there has been a final administrative resolution of any suspension or termination proceeding;
 2. the records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 3. there is a compelling public interest in the disclosure of the records in question.
Id. at (c)(1).
Employee evaluation or job performance records cannot be released unless each prong of this test has been met.
Although the FOIA does not define the term "personnel records," this office has consistently taken the position that "personnel records" are any records other than employee evaluation/job performance records (discussed below) that relate to the individual employee. See, e.g., Ark. Ops. Att'y Gen. Nos.2004-178; 2003-336; 2003-055; 2002-085; 2001-154; 1999-147. Similarly, the FOIA does not define the term "employee evaluation or job performance records," nor has the phrase been construed judicially. This office has consistently taken the position that any records that were created by or at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records. See, e.g., Ops. Att'y Gen. Nos. 2005-030; 2004-211; 2003-073; 1998-006; 1997-222; 1995-351; 1994-306; 1993-055. The record must also have been created for the purpose of evaluating an employee. See, e.g., Op. Att'y Gen. No.2004-012. The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. See J. Watkins, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm Press, 3rd ed. 1994) at 141-42. According to opinions of this office, documents such as written reprimands and letters of caution, documents supporting a recommendation for suspension or dismissal, letters related to promotions and demotions, and records that were generated as part of an investigation of allegations of the misconduct and that detail incidents that gave rise to such allegations generally fall within the category of "employee evaluations or job performance records." See, e.g., Ops. Att'y Gen. Nos. 2003-078; 2001-203; 1999-147; 1993-105; 1993-055; 1992-231; 1991-324. Documents received from third parties generally are not employee evaluation or job performance records, but might be classified as "personnel records." See, e.g., Op. Att'y Gen. Nos. 1998-001
and 1996-342.
Turning to the FOIA request in question, you state that theNews has requested records pertaining to the Police Chief's leave of absence and resignation, including "records forming the basis for the leave of absence as well as records reflecting whether Mr. Carpenter would receive pay and other benefits during the leave of absence." With regard to the latter records, it is my opinion that the "personnel records" provision, (A.C.A. §25-19-105(b)(12), supra), applies to any such records reflecting details of the leave, such as its length and related compensation and other benefits. These records must be released unless their release would constitute a clearly unwarranted invasion of the employee's personal privacy. Id. Although I have no specific information concerning the relevant records, it is my opinion that the City in all likelihood has incorrectly determined not to release records of this sort because of the likely absence of a substantial privacy interest in such records. My predecessors have opined, and I agree, that payroll forms and other records reflecting leaves of absence should be released; and if they contain exempt information, such as medical information or social security numbers, that information should be redacted before the records are released. See, e.g., Ark. Ops. Att'y Gen. Nos. 2003-153; 1993-300; 1991-003.
Regarding the News's request for other records germane to the leave of absence and resignation in this instance, again, not having seen any relevant records, I am not in a position to definitively critique the City's decision to deny the request. I note, however, that resignation does not meet the criteria for release of evaluation or job performance records, which are predicated as a threshold matter upon a "decision to suspend or terminate the employee. . . ." A.C.A 25-19-105(c)(1). See alsogenerally Ark. Ops. Att'y Gen. Nos. 2005-094 and 1992-266. Assuming that the relevant records include evaluation or job performance records, as discussed above, the absence of any suspension or termination decision presumably accounts for the City's decision not to release such records. I recognize in this regard that it is your contention that the "leave of absence" and "resignation" actually constituted a "negotiated suspension and termination." Letter from Charles L. Schlumberger to Mike Beebe (February 21, 2006). This is a possibility I acknowledge but cannot test. As I have already indicated, I am not a finder of fact and I lack information to meaningfully evaluate this contention. I will note, however, that this office has previously opined on numerous occasions that a voluntary resignation in the face of a disciplinary challenge does not equate to a suspension or termination. See, e.g., Ark. Ops. Att'y Gen. Nos. 2004-219; 2002-235; 2001-246; 1998-188; 1997-063. On the other hand, other previous opinions of this office leave open the possibility that a coerced resignation might amount to a constructive termination. One of my predecessors has acknowledged that under certain facts, "a resignation tendered in the face of a more certain, impending termination could be deemed to be a forced, coerced or constructive termination for purposes of A.C.A §25-19-105(c)(1)." Ark. Op. Att'y Gen. 1997-063, citing Dobbinsv. Everett, 2 Ark. App. 254, 620 S.W.2d 309 (1981) (employee, who, faced with certain termination, took less severe, embarrassing and traumatic option of resignation rather than discharge, did not quit voluntarily and without good cause for purposes of employment compensation decision).
I am not situated to resolve the intensely factual question of whether the Police Chief's leave and resignation amounted to a constructive suspension and termination. If, however, the fact of suspension or termination is established, the remainder of the test under A.C.A. § 25-29-105(c)(1), supra, must be addressed. As I have previously noted in this regard, "[t]he question of whether there has been a final administrative resolution of a termination or suspension and the question of whether the requested records formed a basis for that termination or suspension are clearly questions of fact that can be readily determined [by the custodian of the records]." Op. Att'y. Gen.2005-011. The inquiry then focuses on the existence of a "compelling public interest" in disclosure. I have previously stated the following with regard to this portion of the test:
 The FOIA at no point defines the phrase `compelling public interest' as used in the final prong of the test for disclosure set forth in A.C.A. § 25-19-105(c)(1). However, Professors Watkins and Peltz, referring to Attorney General Opinions on this issue, offer the following guidelines:
 . . . [I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee within the agency who commits a serious breach of public trust should be sufficient to satisfy the `compelling public interest' requirement.
Op. Att'y. Gen. 2004-272 at 5, quoting Watkins and Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm Press, 4th ed. 2004) at 196.
Professors Watkins and Peltz also note that: "the status of the employee," or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Id. at 206 (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.")
The existence of a "compelling public interest" in disclosure will necessarily depend upon all of the surrounding facts and circumstances. Although I cannot undertake this factual review, I will note that two factors likely weigh in favor of the existence of a compelling public interest in this instance — the rank of the employee in question and the existence of a public controversy. Again, however, I am not situated to determine whether all the facts considered together would support the release of particular job performance or evaluation records. Only the custodian of the records can make that final decision, subject to review by a trier of fact, such as a judge or jury, with access to, and in full consideration of, all the relevant evidence.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE, Attorney General
MB:EAW/cyh